# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ARTIE DUFUR,

       *Plaintiff*,

    v.

U.S. PAROLE COMMISSION,

       *Defendant*.

Civil Action No. 17-677 (RDM)

## <u>MEMORANDUM OPINION</u>

This case presents the question whether mandatory parole in the federal prison system is mandatory. It is not. That counterintuitive result understandably led Plaintiff Artie Dufur, a *pro se* prisoner who is serving a parole-eligible federal life sentence, to challenge the decision of Defendant United States Parole Commission ("the Commission") denying him parole. Dkt. 1 at 2–3 (Compl. ¶¶ 2–3, 5). As relevant here, there are two paths to parole for inmates in Dufur's position. First, the Commission applies a "two-thirds" rule for what it terms mandatory parole. Under that rule, the Commission is required to release an eligible prisoner, "serving a sentence of five years or longer," after the prisoner has served two-thirds of his sentence or after serving thirty years of a sentence of "more than forty-five years." 18 U.S.C. § 4206(d).[1] The mandatory parole rule, however, is subject to exceptions; among other things, it does not apply if the Commission determines "that there is a reasonable probability that [the prisoner] will commit any Federal, State, or local crime." *Id.* Second, the Commission also possesses the discretion,

---

[1] Although 18 U.S.C. § 4206 has been repealed, it applies in this case because Plaintiff committed the offenses for which he is presently incarcerated prior to 1987. *See* Dkt. 1 at 3; *see also Terrell v. United States*, 564 F.3d 442, 444 (6th Cir. 2009).

subject to certain exceptions, to parole inmates who have served at least one-third of their sentence, or ten years in the case of a life sentence. 18 U.S.C. § 4205. Dufur's principal claim is that the Commission's recent decision to deny him mandatory parole violated various statutory, regulatory, and constitutional provisions. He also alleges that the Commission's earlier decisions denying him discretionary parole were unlawful. The Commission has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2] Dkt. 9.

For the reasons explained below, the Court agrees with Commission that Dufur has failed to state a claim. The Court will, accordingly, **GRANT** the Commission's motion, Dkt. 9, and will **DISMISS** the case.

## I. BACKGROUND

On a motion to dismiss, the Court accepts the plaintiff's "well-pleaded factual allegations" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court also considers "any documents either attached to or incorporated in the complaint and matters" subject to judicial notice. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may, as a result, consider the three administrative decisions attached to Dufur's complaint. The Court may also consider the copies of Dufur's administrative appeal and amended administrative appeal, which are attached to the Commission's motion to dismiss. Although those latter documents were not attached to the complaint, they are referred to in it and are "integral to [the plaintiff's] claim." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119,

---

[2] Separately, Dufur has moved for the appointment of counsel. Dkt. 14. The Court previously issued an order directing the attorney Dufur requested be appointed to enter an appearance if he was prepared to represent Dufur. Minute Order (Nov. 9, 2017). That order was mailed to both Dufur and to the attorney, but the attorney has not entered an appearance. The Court will, accordingly, **DENY** Dufur's motion for appointment of counsel.

1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)); *see also* Dkt. 1 at 4–5, 6–7 (Compl. ¶¶ 7, 10–11); *id.* at 10. More importantly, Dufur does not object to the Commission's reliance on these documents and, indeed, relies on them himself. *See* Dkt. 11 at 5 n.1. Under these circumstances, the Court concludes that it may rely on Dufur's administrative appeal and amended administrative appeal, which in any event only further explicate Dufur's claims, "without converting the motion into one for summary judgment." *Banneker Ventures*, 798 F.3d at 1133.

The events giving rise to Dufur's claims date back to the 1970s, when Dufur was serving a life sentence in California state prison for a double murder. Dkt. 1 at 9, 11. Dufur escaped in 1977, *id.* at 2–3 (Compl. ¶ 4); *id.* at 9, and eventually made his way to Canada, Dkt. 1 at 2–3 (Compl. ¶ 4). On May 24, 1979, Dufur entered the United States "at a customs check point on the Canadian border near Lynden, Washington." *United States v. Dufur*, 648 F.2d 512, 513 (9th Cir. 1980); Dkt. 1 at 2–3 (Compl. ¶ 4). After refusing to submit to a search by a United States Customs inspector, Dufur drew a firearm and shot the inspector to death. Dkt. 1 at 2–3 (Compl. ¶ 4). Dufur was apprehended and, on September 17, 1979, found guilty of first-degree murder of the inspector and armed assault on another federal officer. *Id.* (Compl. ¶ 5). On October 14, 1979, before he was sentenced on that conviction, he escaped from King County Jail in Seattle, Washington, where he was being held on the federal charges. *Id.* at 11–12. During the course of the second escape, he attempted to murder additional law enforcement officers, *id.*, and another inmate was killed, *id.* at 9. After his apprehension, Dufur pleaded guilty to further charges, including escaping custody while awaiting sentencing. *Id.* at 3 (Compl. ¶ 5). He was sentenced on October 17, 1979, on these new charges and the prior murder and assault charges to a minimum of ten years and a maximum of life with the possibility of parole. *Id.* (Compl. ¶ 5).

On June 22, 2004, the Commission calculated that Dufur would become eligible for mandatory parole on September 24, 2016. *Id.* at 11. The Commission also set a hearing for June 2006. *Id.* at 12. The record reveals no details about that proceeding, next referencing a May 25, 2016 parole hearing to consider Dufur's eligibility for mandatory parole. *Id.* at 3 (Compl. ¶ 6). After that hearing, the Commission concluded that Dufur should not be paroled because of the risk that he would commit a crime in the future, *id.* at 3–4 (Compl. ¶ 6), one of the enumerated exceptions in the mandatory parole statute, 18 U.S.C. § 4206(d). Specifically, the Commission determined that "there [was] a reasonable probability that [Dufur would] commit [a] Federal, State or local crime." Dkt. 1 at 3–4 (Compl. ¶ 6). It "still viewed" Dufur "to be a high risk for violent crime on the basis of [(1)] the evidence that[,] while serving a prison sentence[,] [he] coordinated [an] [e]scape from prison custody for [himself] and other inmates[,] which resulted in the death of an inmate and injury to a law enforcement officer," and (2) the evidence that he previously "murder[ed] a U.S. Border Patrol Agent . . . after . . . escap[ing] from California [s]tate [c]ustody while serving another sentence for murder." *Id.* (Compl. ¶ 6). The Commission recognized that Dufur had "completed substantial program[m]ing" in prison, but found that "the nature and seriousness of [his] violent criminal behavior indicate[d] to the Commission that [he] remain[ed] a threat to the community if" he were to be paroled. *Id.* (Compl. ¶ 6). The Commission set a further hearing for June 2018, at which time it will once again review Dufur's eligibility for mandatory parole. *Id.* (Compl. ¶ 6).

Dufur appealed that decision to the Commission's National Appeals Board. *Id.* at 4–5 (Compl. ¶ 7). In that setting, he argued that the Commission (1) lacked "jurisdiction" over his escape from federal custody in 1979 because it occurred prior to the imposition of a sentence on the federal changes; (2) violated 28 C.F.R. § 2.14(b)(4)(i) by using the state and federal escapes

to deny mandatory parole after having previously used those escapes to deny discretionary parole in 1989; and (3) violated 18 U.S.C. § 4206(d) by failing to grant him mandatory parole despite a "sentence expiration date of" September 24, 2016. *See* Dkt. 9-1 at 3–5, 8–10. He later amended his appeal, dropping the references to violations of Commission regulations and supplementing his other arguments. *Id.* at 7–9.

On November 25, 2016, the National Appeals Board affirmed the Commission's earlier decision denying mandatory parole. Dkt. 1 at 10. The Board first rejected Dufur's argument that it could "not take into account [his] escape on October 14, 1979, because it occurred before [he was] federally sentenced." *Id.* As the Board explained, Dufur was in federal custody at the time of his escape, and, indeed, that period of federal custody "was credited towards [his] federal sentence." *Id.* The Board also rejected Dufur's argument that he was denied mandatory parole in violation of 18 U.S.C. § 4206(d). *Id.* Although recognizing that § 4206(d) gives rise to "a presumption of mandatory parole release," the Board observed that, "if the Commission finds, after a hearing, that there is a reasonable probability that [a prisoner] would commit any crime if released, or that [a prisoner] ha[s] frequently or seriously violated institution rules, it 'shall not release such prisoner.'" *Id.* (quoting 18 U.S.C. § 4206(d)). The Board also concluded that it "could have found that [Dufur] seriously violated institution rules[] by escaping" in 1979. *Id.* Finally, the Board did not address Dufur's initial contention that the Commission had violated 28 C.F.R. § 2.14(b)(4)(i), presumably having determined that Dufur had abandoned the argument in his amended appeal. Dkt. 9 at 3 n.2.

Dufur brought the present action on April 17, 2017, seeking (1) a declaratory judgment that the Commission violated its regulations and the Due Process Clause of the Fifth Amendment in denying him parole; and (2) an order directing that the Commission conduct a new parole

hearing.  Dkt. 1 at 7 (Relief Requested).  He advances several theories as to why he is entitled to

this relief.  First, Dufur claims that the Commission violated § 4206(d) by failing to release him

after he reached his mandatory parole date.  *Id.* at 3–5 (Compl. ¶¶ 6–7); *id.* at 7 (Compl. ¶ 11).

Second, he argues that the Commission violated 18 U.S.C. §§ 4161, 4163, 4205, and 4206(a) by

denying him discretionary parole "at previous hearings."  *Id.* at 7 (Compl. ¶ 11).  Third, he

argues that the Commission violated its own regulations by considering his original offense

conduct and violations of prison regulations that occurred in 2001 when denying him

discretionary parole in 2004 and mandatory parole in 2016.  *Id.* at 4–6 (Compl. ¶¶ 7–9); *id.* at 7

(Compl. ¶ 11).  Fourth, he asserts that the Commission violated its regulations regarding victim

interest statements by considering statements by law enforcement groups when denying him

mandatory parole in 2016.  *Id.* at 6–7 (Compl. ¶¶ 10–11).  Fifth, he claims that the Commission

violated his substantive and procedural due process rights, both when it denied him mandatory

parole in 2016 and when it previously denied him discretionary parole.  *Id.* at 7 (Compl. ¶ 11).

The Commission moves to dismiss on the ground that Dufur has failed to state a claim

upon which relief can be granted.  *See* Dkt. 9.  It first asserts that he has not alleged a due process

violation because the denial of parole does not implicate any protected liberty interest.  *Id.* at 3–

6.  Second, the Commission argues that Dufur has not stated a claim for violation of 18 U.S.C.

§4206(d) because "mandatory" parole is not really mandatory.  *Id.* at 6–7.  Third, it contends that

none of the regulations Dufur cites were actually violated.  *Id.*  The Commission does not

address in detail Dufur's contention that its earlier denials of discretionary parole violated

Commission regulations or additional statutory provisions beyond 18 U.S.C. § 4206(d) because

"his complaint fails to provide any factual content regarding such previous parole hearings or

decisions, including the relevant dates and whether he filed any administrative appeal."  *Id.* at 3.

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (internal citation omitted) (quoting *Iqbal*, 556 U.S. at 675, 678).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Finally, pleadings filed by *pro se* litigants are held to less stringent standards than those drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.  ANALYSIS

Dufur's allegations broadly fall into three categories: violations of statutes, violations of regulations, and violations of the Constitution.  Before turning to these issues, however, the Court must consider whether Dufur's claims sound in habeas and, if so, whether and how that affects the Court's authority to adjudicate them.

The courts have long held that claims "lying at the 'core' of the writ must be brought in habeas." *Aamer v. Obama*, 742 F.3d 1023, 1037 (D.C. Cir. 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973), and more recent cases).  Over time, the D.C. Circuit came to interpret what lies at the "core" of the writ more capaciously in cases brought by federal prisoners than in cases brought by state prisoners.  With respect to cases brought by state prisoners, the court

adopted a relatively narrow "channeling" rule requiring a claim to "first be brought in habeas only when, if successful, it would 'necessarily imply,' or automatically result in, a speedier release from prison." *Anyanwutaku v. Moore*, 151 F.3d 1053, 1056 (D.C. Cir. 1998). In *Razzoli v. Federal Bureau of Prisons*, 230 F.3d 371 (D.C. Cir. 2000), in contrast, the court applied a more expansive channeling rule to claims brought by federal prisoners, *id.* at 375–76. Under that rule, a federal prisoner was required to proceed in habeas not only "when, if successful," the prisoner's claim "would necessarily imply . . . a speedier release from prison," but also when success would have "a merely probabilistic impact on the duration of custody." *Id.* at 375 (internal quotation marks omitted). The D.C. Circuit overruled *Razzoli* in 2013, however, and thereby aligned the rules applicable to state and federal prisoners. *See Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660 (D.C. Cir. 2013). Under the now prevailing rule, a federal prisoner, like a state prisoner, "need bring his claim in habeas only if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Id.* at 666 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)).

Although this rule is clear, it does not neatly map on to Dufur's claims. Consistent with the post-*Razzoli* rule, Dufur at times states that he "is not requesting this Court to order his release on parole" and, instead, is asking only that the Court order the Commission to hold a further "hearing to decide if he can be released to his California detainer to begin serving [his state-law] life sentence." Dkt. 11 at 3 (emphasis omitted). But, at other times, he seems to press claims that, if successful, would "necessarily . . . shorten [the] duration" of his sentence. He asserts, for example, that his "federal sentences have been satisfied and by law the [Bureau of Prisons] must process the [California] detainer." *Id.* at 5.

This lack of clarity is resolved, in part, by contours of the Commission's motion to dismiss, which does not invoke the channeling defense and which makes only glancing reference to the habeas venue rules. As an initial matter, the Court concludes that the habeas channeling rule is not jurisdictional in the sense that the Court has a duty to consider the defense *sua sponte*. Rather, the rule is a prudential one, which was established by the courts to ensure that prisoners do not evade the procedural requirements that Congress has enacted to govern habeas proceedings. *See*, *e.g.*, *Preiser*, 411 U.S. at 489–90; *Aamer*, 742 F.3d at 1031–32; *Davis*, 716 F.3d at 662–63. The relevant habeas procedural rules, moreover, are either inapplicable in this case or are themselves subject to waiver. Were the Court to treat this case as an action sounding in habeas, two procedural hurdles would likely apply. First, the immediate custodian rule requires that a habeas petitioner name as the respondent "the person who has custody over him." 28 U.S.C. § 2242; *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). Here, Dufur has named the Commission and not the warden of the prison where he is held. Second, the territorial jurisdiction rule requires "that the court issuing the writ have jurisdiction over the custodian." *Padilla*, 542 U.S. at 442 (citation omitted). Neither of those requirements, however, limits the subject matter jurisdiction of the federal district courts, and both requirements—like venue and personal jurisdiction—are subject to waiver, at least where the named respondent "is fully capable of granting the requested relief." *See Lane v. United States*, No. 14-731, 2015 WL 6406398, at *3–7 (D.D.C. Oct. 21, 2015). The question, then, is whether the Commission has waived the channeling rule and, by implication, the immediate custodian and territorial jurisdiction rules.

The Commission's motion to dismiss makes no mention of the channeling rule or of the immediate custodian rule. For the most part, moreover, it does not challenge venue (or, in other

words, territorial jurisdiction) and, indeed, expressly disavows that venue is at issue. Dkt. 13 at 3–4. But, despite that concession, and seemingly at odds with it, the Commission also states the following in both its opening and reply briefs: "[T]o the extent that Dufur's substantive due process claim rests upon his misinterpretation of mandatory parole as requiring his release by September 24, 2016, . . . that is a claim that sounds in habeas because it seeks to shorten the duration of his confinement for a life sentence," and "[t]his Court . . . is an improper venue for any habeas claim because Dufur is not in custody in this District." Dkt. 9 at 5; Dkt. 13 at 3–4.

The Court concludes, however, that considerations of venue do not deprive the Court of its ability to dismiss this case for failure to state a claim. First, the law is clear that "a party's failure to object to venue may waive the issue," *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 880 (D.C. Cir. 2015), even in the habeas context, *see Lane*, 2015 WL 6406398, at \*3–7; *see also Rumsfeld*, 542 U.S. at 451–52 (Kennedy, J., concurring). Here, the Commission has only moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and has not moved to dismiss or transfer for improper venue pursuant to Rule 12(b)(3). Dkt. 9 at 1, 2–3. Moreover, even if a court might not penalize a party for miscaptioning its motion, this is not such a case. To the contrary, although the Commission's position is not entirely clear, the agency is adamant in declaring that it has not moved to dismiss for improper venue. Dkt. 13 at 3 ("[T]he Parole Commission did not move to dismiss for improper venue or a discretionary change of venue."). The Court declines to read the Commission's cursory reference to the appropriateness of venue as overcoming this categorical waiver.[3]

_____

[3] Even if the Court were to conclude that the Commission had not waived any objection to venue, the Court would still be presented with the question of whether or not it would be in the interest of justice to transfer the claims sounding in habeas or dismiss them outright. *See Smith v. U.S. Bureau of Prisons*, 971 F. Supp. 2d 99, 102 (D.D.C. 2013). In light of the problems with Dufur's claims identified below, the Court would, alternatively, find that it would not be in the

The Court will, accordingly, reach the merits of all of Dufur's claims.

## A.    Statutory Violations

Dufur claims that the Commission's denial of mandatory and discretionary parole in 2016 "and at previous hearings" violates 18 U.S.C. §§ 4161, 4163, 4205, 4206(a) and 4206(d).  Dkt. 1 at 7.  As an initial matter, Dufur has alleged no facts in his complaint in connection with the purported violations of § 4161 or § 4163, both of which are (now-repealed) provisions of U.S. Code that address the calculation and application of good time credits for prisoners serving sentences "for a definite term other than for life," 18 U.S.C. § 4161; *see also Woodson v. Attorney General*, 990 F.2d 1344, 1345 n.1 (D.C. Cir. 1993) ("Repeal became effective on November 1, 1987, . . . but the statutes remain applicable to prisoners . . . who were convicted of an offense prior to the date of repeal.").  Even if the Court were to infer from Dufur's opposition, Dkt. 11 at 3–6, that he intends to allege an improper calculation of good time credit, under the plain language of the statutes such credit is unavailable to prisoners, like Dufur, who are serving life sentences.  *See, e.g.*, *Escamilla v. Outlaw*, 335 F. App'x 382, 383–85 (5th Cir. 2009) (rejecting claim that a presumptive parole date set by the Commission transforms a life sentence into a credit-eligible sentence); *Venetucci v. Reese*, 46 F. App'x 381, 382 (8th Cir. 2002) (same); *cf. Glascoe v. United States*, 358 F.3d 967, 969–70 (D.C. Cir. 2004) (rejecting similar argument in context of analogous D.C. Code good time provision).

Similarly, Dufur has not alleged facts sufficient to establish a violation of § 4205 or § 4206(a), which govern the administration of discretionary parole for prisoners convicted of offenses committed before 1987.  *Terrell*, 564 F.3d at 444–45.  The former provides in relevant

---

interest of justice to transfer the case, and would dismiss those claims sounding in habeas.  *See Zaidi v. U.S. Sentencing Comm'n*, 144 F. Supp. 3d 1, 3 (D.D.C. 2015).

part that most prisoners serving life sentences shall be eligible for discretionary parole after ten years of imprisonment.  18 U.S.C. § 4205(a).  The latter provides:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines . . . that release would not depreciate the seriousness of his offense or promote disrespect for the law; and . . . that release would not jeopardize the public welfare . . . subject to the provisions of subsections (b) and (c) of this section . . . such prisoner shall be released.

18 U.S.C. § 4206(a).  The referenced subsections (b) and (c) go on to explain that a prisoner shall be provided "with a written notice" of the Commission's decision within twenty-one days of the parole hearing, that "[i]f parole is denied such notice shall state with particularity the reasons for such denial," and that "[t]he Commission may grant or deny release on parole notwithstanding the guidelines referred to in [§ 4206(a)] if it determines there is good cause for so doing."  18 U.S.C. § 4206(b), (c).

Dufur has failed to allege any facts supporting his claim that the Commission did not comply with these provisions, instead offering only the conclusory assertion that the Commission "at previous hearings violat[ed] the standards of discretionary parole."  Dkt. 1 at 7 (Compl. ¶ 11).  Such a conclusory allegation is insufficient to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 681.  In his opposition to the Commission's motion to dismiss, Dufur elucidates the claim to a degree, stating "that there is little purpose to continue interim [discretionary parole] hearings for a prisoner who has been denied mandatory parole for a 'serious' rule violation if the severity of the violation cannot be reduced by the passage of time."  Dkt. 11 at 4.  But, even if a plaintiff could revive a complaint lacking sufficient factual detail in an opposition brief, *see ACLU v. Trump*, 266 F. Supp. 3d 133, 142 n.5 (D.D.C. 2017) ("[I]t is axiomatic that a party may not amend [her] complaint via [her] briefing." (internal quotation

marks omitted)), the only allegations or contentions before the Court regarding discretionary parole hearings concern hearings that occurred before Dufur was denied mandatory parole in 2016. *See* Dkt. 1 at 11 (denying discretionary parole in 2004); Dkt. 9-1 at 4 (referencing denial of discretionary parole in 1989 on the basis of Dufur's state escape). As a result, Dufur seeks to challenge a future decision by the Commission on the ground that such a decision must be premised on factors other than those relied upon in denying him mandatory parole in 2016. Even assuming for the sake of argument that it would violate § 4205 or § 4206(a) to rely on a single serious rule violation to deny discretionary parole after that same infraction formed the basis of a denial of mandatory parole—a dubious proposition given the expansive discretion committed to the Commission in §4206(a) and (c), *see Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir. 1981)— Dufur has not alleged that any such denial has yet occurred.

Dufur's claim that the Commission has violated § 4206(d) fares no better. He alleges that the Commission did not "directly address the mandatory requirements of the statute," Dkt. 1 at 4, that his "sentence expir[ed]" on September 24, 2016, Dkt. 9-1 at 5, and that "mandatory parole must be granted," *id.* That contention misunderstands the nature of mandatory parole. To be sure, Section 4206(d) does provide that a prisoner "shall be released on parole" at the prisoner's mandatory parole date. But the statute goes on to state "[t]hat the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." 18 U.S.C. § 4206(d). Those caveats mean that "mandatory" parole is not really mandatory. *See Bruscino v. True*, 708 F. App'x 930, 935 (10th Cir. 2017). To the extent Dufur alleges that the Commission was required to grant him parole, and that it lacked discretion to

consider his violation of prison rules or the risk that he will commit future crimes, he has failed to state a claim.

Dufur also references the "arbitrary and capricious" standard set forth in the Administrative Procedure Act ("APA"), *see* 5 U.S.C. § 706(2)(A), and appears to challenge the Commission's justification for denying him parole, Dkt. 11 at 4–6. Decisions to deny parole, however, are explicitly committed by statute to the Commission's discretion, 18 U.S.C. § 4218(d) (stating that "[a]ctions of the Commission" including denying parole "shall be considered actions committed to agency discretion for purposes of [5 U.S.C. § 701]"); *Bowers v. Keller*, 651 F.3d 1277, 1291 (11th Cir. 2011), and they are not subject to review under the APA, *Cole v. Fulwood*, 879 F. Supp. 2d 60, 68 (D.D.C. 2012) (holding that because "[f]or purposes of the APA, the decision to grant or deny parole is committed to the [Commission's] discretion by law . . . [t]he Court . . . has jurisdiction only to determine whether the Commission has violated an explicit requirement of its organic statute, its internal regulations or the Constitution, but not to review substantive decisions."). As Dufur concedes, the Commission made the finding called for by the statute when denying him mandatory parole. Dkt. 1 at 4–5 (Compl. ¶ 7). His challenge is to the rationale for that finding. That reasoning "is not reviewable under the APA." *Cole*, 879 F. Supp. 2d at 68; *see also Turner v. Henman*, 829 F.2d 612, 614 (7th Cir. 1987).

That leaves only a single possible vehicle to the review of the substance of the Commission's finding: a petition for habeas corpus. If the Court were to construe Dufur's complaint as a habeas petition, it *might* have the authority to review the reasoning behind the Commission's decision, albeit under a highly deferential standard. *Slader v. Pitzer*, 107 F.3d 1243, 1246 (7th Cir. 1997) (reviewing Commission decision for abuse of discretion); *Glumb v. Honsted*, 891 F.2d 872, 873 (11th Cir. 1990) ("A federal court will not reverse a decision of the

Commission unless it involves flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion."); *see also Johnson v. U.S. Parole Comm'n*, 419 F. App'x 438, 438–39 (5th Cir. 2011) ("Because the [Commission] has 'absolute discretion' in parole determinations, however, its conclusions are reviewed with extreme deference, reviewing them only to determine whether there is some evidence in the record to support [its] decision." (internal quotation marks omitted)); *Wallace v. Christensen*, 802 F.2d 1539, 1545 (9th Cir. 1986) ("Congress has specifically rebutted the presumption of reviewability of the Commission's substantive decisions to grant or deny parole, and, therefore, these decisions may not be reviewed even for abuse of discretion.").

Under that deferential standard, Dufur's challenge necessarily fails. He appears to argue that the Commission improperly relied on the severity of his original offense, prison misconduct that occurred in 2001, and his escape from custody prior to his sentencing on any federal crime when it denied him mandatory parole in 2016. Nothing in § 4206(d), however, prevents the Commission from considering those factors in deciding whether Dufur "seriously or frequently violated institution rules and regulations or" is "reasonabl[y]" likely to "commit any Federal, State, or local crime" if paroled. 18 U.S.C. § 4206(d); *Wallace*, 802 F.2d at 1551; *Johnson*, 419 F. App'x at 439 (rejecting a challenge to a denial of mandatory parole based on "older disciplinary infractions, instead of considering [the prisoner's] claimed more recent record of good behavior" because § 4206(d) does not restrict the Commission's ability to make such a determination). Nor is the Court persuaded that the Commission was compelled to conclude that Dufur is unlikely to commit any future crime because he is on a detainer and will, if released from federal detention, move to a California state prison "to begin to serve a life sentence" imposed under California law. Dkt. 11 at 5. Indeed, Dufur's own history demonstrates that an

individual serving a sentence under state law is fully capable of committing a further crime, and the Commission is entitled to consider the federal interest in mitigating the risk posed by those convicted of federal crimes.

The Court will, accordingly, dismiss Dufur's claim that the Commission's denial of parole violated the statutory provisions he has identified.

## B.    Regulatory Violations

Dufur also alleges that the Commission did not comply with 28 C.F.R. §§ 2.14(a), 2.14(b)(4)(i), 2.19(a)(6), and 2.28(b).[4]  Dkt. 1 at 6–7.  The Court discusses each alleged regulatory violation in turn.  Because the agency has not challenged the Court's power to review the Commission's compliance with the regulatory provisions cited by Dufur, *see* Dkt. 9 at 7–9, the Court assumes that it may consider the substance of Dufur's claims.  *See, e.g.*, *Cole*, 879 F. Supp. 2d at 68 (holding that a court may "determine whether the Commission has violated an explicit requirement of . . . its internal regulations"); *Garcia*, 660 F.2d at 988 (observing in the context of reviewing a Parole Commission decision that "courts have assumed the power to review allegations that [the Commission] . . . failed to follow its own regulations").

Section 2.14:  Under the statutory framework applicable here, if the Commission denies parole at the "initial hearing," it must conduct "subsequent parole determination proceedings," referred to as interim hearings, "not less frequently than [every] twenty-four months."  18 U.S.C. § 4208(h).  "Following [the] initial hearing, the Commission" is required to "set a presumptive

---

[4] In his opposition to the Commission's motion to dismiss, Dufur further asserts that the Commission violation 28 C.F.R. § 2.13(f).  Dkt. 11 at 10.  "It is axiomatic," however, "that a complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012).  The Court, accordingly, will not consider that additional contention.

release date," "set an effective date of parole," or "continue the prisoner to a fifteen year reconsideration hearing." 28 C.F.R. § 2.12. "The purpose of [the] interim hearing[s]" required by 8 U.S.C. § 4208(h) is "to consider any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial hearing." 28 C.F.R. § 2.14(a). At those "interim hearing[s]," the Commission may "[o]rder no change in its previous decision" or may "advance" or "[r]etard" the prisoner's "presumptive parole date." 28 C.F.R. § 2.14(a)(2). Finally, prior to a prisoner's release, the Commission is required to conduct "a pre-release review . . . to determine whether the conditions of a presumptive release date . . . have been satisfied," and, where "[t]here has been no finding of misconduct . . . nor any allegation of criminal conduct since the last hearing[,] and . . . [n]o other modification of the release date appears warranted, the Executive Hearing Examiner may . . . approve conversion of the presumptive parole date to an effective" date of parole. 28 C.F.R. § 2.14(b).

Dufur construes these regulations as requiring the Commission to base any denial of parole on events subsequent to the prisoner's last discretionary parole hearing, which he submits would entitle him to parole because his last criminal activity disciplinary infraction occurred in 2001, prior to both his 2004 discretionary parole hearing and his 2016 mandatory parole hearing. Dkt. 1 at 4–6 (Compl. ¶¶ 7–9). This argument fails for at least two reasons. First, Dufur misreads § 2.14(b)(4); it does not say, as Dufur suggests, that the Commission *shall* set an effective date of parole if no new misconduct occurs after the previous interim hearing but, rather, says that the Commission *may* do so. 28 C.F.R. § 2.14(b)(4). Moreover, § 2.14(b)(4) *requires* that the Commission consider—more generally—whether modification of the prisoner's presumptive release date "appears warranted." *Id.* Second, even apart from § 2.14, other regulations governing parole decisions specifically provide for the continued consideration of the

original offense conduct in making parole determinations. *See, e.g.*, 28 C.F.R. § 2.19(a) ("[T]he Commission shall consider, if . . . relevant[,] . . . the prisoner's prior criminal record."); *see also Nunez-Guardado v. Hadden*, 722 F.2d 618, 624 (10th Cir. 1983) ("Prison conduct is only one of the factors to be considered in parole release decisions," and "[t]he weight to be given to institutional adjustment is a matter of discretion."); *Stroud v. U.S. Parole Comm'n*, 668 F.2d 843, 847 (5th Cir. 1982) (when making a parole determination "the Commission may consider a prisoner's prior criminal record"). That is precisely what formed the basis of the Commission's denial of mandatory parole. *See* Dkt. 1 at 10–11.

Section 2.19: Dufur also alleges that the Commission violated § 2.19(a)(6) by "consider[ing] submissions from, *inter alia*, the National Law Enforcement Officers Memorial Fund, U.S. Customs Agents, [the] Association of Former Customs Special Agents, and Immigration and Customs Enforcement Agents who were not 'victims' and were not on the scene at the time of any of the offenses for which Dufur was convicted." Dkt. 1 at 6–7 (Compl. ¶ 10). Section 2.19(a)(6) provides that, "if available and relevant," the Commission must consider "[a] statement . . . by any victim of the offense . . . about the financial, social, psychological, and emotional harm done to, or loss suffered by such victim." 28 C.F.R. § 2.19(a)(6). That, however, is just one portion of the larger regulation, which goes on to require that the Commission "take[] into consideration such additional relevant information concerning the prisoner . . . as may be reasonably available." 28 C.F.R. § 2.19(b)(1). Without qualification, the regulation then "encourages the submission of relevant information concerning an eligible prisoner by *interested persons*," *id.* (emphasis added), and adds:

> Recommendations and information from sentencing judges, defense attorneys, prosecutors, *and other interested parties* are welcomed by the Commission. In evaluating a recommendation concerning parole, the Commission must consider the degree to which such recommendation provides the Commission with specific

> facts and reasoning relevant to the statutory criteria for parole . . . and the application of the Commission's guidelines . . . . Thus, to be most helpful, a recommendation should state its underlying factual basis and reasoning. However, no recommendation . . . may be considered as binding upon the Commission's discretionary authority to grant or deny parole.

28 C.F.R. § 2.19(d) (emphasis added). Accordingly, the Commission did nothing improper—and, in fact, complied with the regulations—when it considered the submissions made by the National Law Enforcement Officers Memorial Fund, the Association of Former Customs Special Agents, and others regarding Dufur's parole.

Dufur disagrees, arguing that the Commission should have rejected the submissions because they contained no "relevant information" within the meaning of § 2.19. Dkt. 11 at 8–9. In support of this contention, Dufur argues that "[t]he meaning of 'relevant information'" in the regulation, 28 C.F.R. § 2.19(b)(1), and statute, 18 U.S.C. § 4207, "is analogous to the definition of 'relevant evidence' found in" the Federal Rules of Evidence. Dkt. 11 at 8. He then posits that the submissions he challenges did not have "any tendency to make a fact more or less probable," as required by Rule 401(a), and that the submissions relied on convictions that were too stale to have probative value, as delineated by Rule 609(b). *Id.* at 8. That argument fails on two grounds. First, nothing prevents the Commission from *receiving* submissions from any and all interested people and groups. Indeed, the Commission cannot know whether a submission contains "relevant information" until the Commission receives and considers it. The relevant limitation, instead, is on how the Commission uses the information it receives, and, here, there is no allegation that it improperly relied on any information contained in the challenged submissions. To the contrary, Dufur challenges only the fact that submissions from these organizations were considered at all. Dkt. 1 at 6–7. Second, Dufur's reliance on the Federal Rules of Evidence is misplaced. Not only are the Rules of Evidence inapplicable to parole

proceedings, *see Ash v. Reilly*, 431 F.3d 826, 829 (D.C. Cir. 2005); *Furnari v. Warden, Allenwood Fed. Corr. Inst.*, 218 F.3d 250, 254 (3d Cir. 2000), but, as explained above, the parole regulations expressly contemplate that the Commission will consider the "prisoner's prior criminal record," 28 C.F.R. § 2.19(a), without temporal limitation.

Finally, Dufur argues for the first time in his opposition brief that certain information was not provided to him in advance of his mandatory parole hearing. Dkt. 11 at 7 & n.4, 9–10. He contends that the failure to provide him with the interest statements violated 28 C.F.R. § 2.19(c)(3) by depriving him of an opportunity to respond to the "aggravating circumstances" the statements purportedly laid out, and he further argues that the failure to provide him with a record of his 2004 discretionary parole hearing violated 28 C.F.R. § 2.13. *Id.* Because Dufur's complaint does not contain any reference to either of these contentions, however, they are not properly before the Court.[5]

The requirements for alleging a claim are not demanding; to survive a motion to dismiss, a complaint need only "contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 677–78 (quoting Fed. R. Civ. P. 8(a)(2)). But, Dufur's access-to-information claim fails even that modest test. To be sure, pleadings drafted by *pro se* litigants are not held to the same standards applicable to those drafted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). That leeway, however, has limits and does not

---

[5] In its reply to Dufur's opposition, the Commission submits the declaration of its General Counsel. Dkt. 13-1. She states that Dufur was in fact given an advance opportunity to review all of the materials in his file that would be considered at his mandatory parole hearing but elected not to do so. *Id.* at 1–2. The Commission further submits copies of the signed document in which Dufur did not elect to inspect any materials in his parole file before the hearing. *Id.* at 3–4. The Court may not consider the declaration or document without converting the Commission's motion to dismiss into a motion for summary judgment. The Court declines to do so because the claim is not, in any event, properly before the Court.

relieve even *pro se* litigants of the obligation to allege facts sufficient to put the opposing party on notice of what claim the *pro se* litigant intends to pursue. *See Bowman v. Iddon*, 848 F.3d 1034, 1039–40 (D.C. Cir. 2017). Nor can Dufur cure this omission through the vehicle of his opposition brief. To the contrary, as this Court has repeatedly held, "a party may not amend his complaint through an opposition brief." *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014); *see also Borda v. U.S. Dep't of Justice, Criminal Div.*, 245 F. Supp. 3d 52, 57 (D.D.C. 2017); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007); *Arbitraje Casa de Cambio, S.A. de C.V.*, 297 F. Supp. 2d at 170; *Coleman*, 94 F. Supp. 2d at 24 n.8; *see also Rollins*, 703 F.3d at 130.

The Court will, accordingly, dismiss Dufur's complaint to the extent it alleges—and purports to allege—that the Commission violated its own regulations.

**C.    Constitutional Violations**

Finally, Dufur alleges three constitutional claims, all premised on the Fifth Amendment: a violation of his right to procedural due process, a violation of his right to substantive due process, and a violation of his right to equal protection under the law.

Turning first to his procedural due process claim, the Court must "proceed[] in two steps." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). The Court must "ask whether there exists a liberty or property interest of which a person has been deprived, and if so . . . ask whether the procedures followed . . . were constitutionally sufficient." *Id.* With respect to the first step in this analysis, it is settled law that the Constitution itself does not create a liberty interest in parole. *Ellis v. District of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996). For protections to be constitutionally mandated, some additional liberty interest must "emanate" from the federal parole statute or the implementing regulations. *See id.*

The D.C. Circuit has never expressly decided whether the federal parole statutes at issue here, 18 U.S.C. §§ 4206(a) and 4206(d), create a protectable liberty interest in parole. The analysis of the Supreme Court in *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1 (1979), however, is instructive. The Nebraska statute at issue in that case provided that upon consideration of an eligible inmate, the Nebraska Board of Parole "*shall* order his release *unless* it is of the opinion that his release should be deferred because" of one or more specified reasons, including that "[t]here is a substantial risk that he will not conform to the conditions of parole," or that "[h]is release would depreciate the seriousness of his crime or promote disrespect for law." *Id.* at 11 (emphasis added). In light of the "shall . . . unless" structure of this provision, the Supreme Court held that the Nebraska prisoner had an "expectancy of release" and thus was "entitled to some measure of constitutional protection." *Id.* at 12. That protection, however, was limited and was satisfied by a procedure that "afford[ed] an opportunity to be heard, and when parole is denied[,] . . . inform[ed] the inmate in what respect he f[ell] short of qualifying for parole" was all the process that the Constitution required. *Id.* at 7, 15–16. In a later decision, *Board of Pardons v. Allen*, 482 U.S. 369 (1987), the Court reaffirmed this approach to evaluating whether parole statutes create protectable liberty interests, holding that a Montana statute employing similar "shall . . . unless" language also created a liberty interest sufficient to require at least some procedural protections, *id.* at 377–81.

The structure and language of the federal statutory provisions mirrors that of the Nebraska and Montana statutes. Section 4206(a), addressing discretionary parole, states:

> If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines . . . that release would not depreciate the seriousness of his offense or promote disrespect for the law; and . . . that release would not jeopardize the public welfare; subject to the provisions of subsections

> (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

18 U.S.C. § 4206(a).  Although the structure of the provision is inverted, § 4206(a) does provide that a "prisoner shall be released" when certain findings are made.  Section 4206(d), addressing mandatory parole, is even closer in structure to the statutes considered in *Greenholtz* and *Allen*:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

18 U.S.C. § 4206(d).  Here, the "shall . . . unless" structure is clear, with the first half of the statute creating a presumption of release that can be overcome through the findings laid out in the second.

Given these similarities, the Court concludes that the level of process demanded in *Greenholtz* is required when the Commission denies federal prisoners parole under § 4206(a) or § 4206(d).  *See Allen*, 482 U.S. at 378 (holding that "a statute that mandates release 'unless' certain findings are made" or "that mandates release 'if,' 'when,' or 'subject to' [certain] findings being made . . . creates a presumption that parole release will be granted" such that *Greenholtz* supplies the necessary level of process (citation omitted)).  Those circuits that have considered the question, moreover, have generally reached the same conclusion: the federal parole statutes give rise to the same measure of constitutional protection as the Nebraska statute at issue in *Greenholtz*.  *See, e.g.*, *Furnari v. U.S. Parole Comm'n*, 125 F. App'x 435, 437 (3d Cir. 2005) (applying *Greenholtz* standard to evaluate federal prisoner's due process claim); *Kindred v. Spears*, 894 F.2d 1477, 1481 (5th Cir. 1990) (holding that 18 U.S.C. § 4206(a) "mirrors the

language in the Montana statute construed by the Supreme Court in *Allen*" and thus creates a liberty interest sufficient to require the procedures laid out in *Greenholtz*); *Hickson v. Burkhart*, 838 F.2d 1209 (4th Cir. 1988) (table decision) (holding that § 4206(d) creates a protected liberty interest under *Greenholtz*); *Solomon v. Elsea*, 676 F.2d 282, 285 (7th Cir. 1982) (holding that 18 U.S.C. § 4206(a) "gives rise to the same liberty interests as were found to exist in *Greenholtz*"); *cf. Reynolds v. McCall*, 701 F.2d 810, 812 (9th Cir. 1983) ("We have held that the federal parole statute creates, at most, a liberty interest entitled to no more protection of due process than that the Supreme Court held to apply to the Nebraska parole statute in *Greenholtz*.").

Even though federal prisoners are entitled to a measure of constitutional protection in the Commission's application of § 4206(a) and § 4206(d), the Court concludes that Dufur received the process he was due. In particular, as required under *Greenholtz*, "he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." *Swarthout*, 562 U.S. at 220. Indeed, he received substantially more process than the Constitution requires: he was given in-person parole hearings in 2016 and 2004, he had the opportunity to bring a representative to each of his hearings (and did in fact bring one in 2004), and he had the right to appeal the Commission's 2016 decision. *See, e.g.*, Dkt. 1 at 6 n.1, 9–13. And to the extent that he alleges that the Commission has failed to follow its own regulations or procedures in considering whether to parole him, a federal agency's violations of its own procedures does not—absent some allegation of reasonable reliance and injury—implicate the Due Process Clause. *See United States v. Caceres*, 440 U.S. 741, 751–54 (1979); *Brandon v. D.C. Bd. of Parole*, 823 F.2d 644, 649 (D.C. Cir. 1987) (holding that prisoner denied parole "does not have a constitutionally protected interest in having the Board adhere to its procedural requirements").

Dufur's complaint fails to allege anything other than bare noncompliance, which the D.C. Circuit has held does not "itself take[] on constitutional dimensions." *Brandon*, 823 F.2d at 648.

Dufur also alleges a substantive due process violation, but offers no specific factual support for his claim. "To state a substantive due process claim, a plaintiff must assert that a government official was so 'deliberately indifferent' to his constitutional rights that the official's conduct 'shocks the conscience.'" *Stoddard v. Wynn*, 68 F. Supp. 3d 104, 113 (D.D.C. 2014) (quoting *Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403–04 (D.C. Cir. 2006)). That is a high bar, encompassing only behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Phillips*, 455 F.3d at 403 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). The sort of behavior Dufur alleges the Commission engaged in, such as the failure to follow internal regulations and the unjustified denial of parole, does not meet that standard.

Dufur's final constitutional argument relies on the "[t]he equal protection principles embodied in the Due Process Clause of the Fifth Amendment," which "demand, at a minimum" that the government "apply its laws in a rational and nonarbitrary way." *Brandon*, 823 F.2d at 650. The Commission's decisions to deny Dufur parole must, accordingly, be "rationally supported." *Johnson v. Reilly*, 734 F. Supp. 2d 26, 28 (D.D.C. 2010); *Rockingham v. U.S. Parole Comm'n*, 523 F. Supp. 2d 38, 42 (D.D.C. 2007) ("The court determines only whether the [parole] revocation decision was 'either totally lacking in evidentiary support or [was] so irrational as to be fundamentally unfair.'" (quoting *Singletary v. Reilly*, 452 F.3d 868, 872 (D.C. Cir. 2006))). Dufur has not plausibly alleged that the Commission lacked a rational basis to deny him parole—to the contrary, Dufur's complaint alone supplies a rational basis for denial in its recitation of his prior criminal activity, which included three murders and two prison

breaks.  On the basis of that information, the Commission's determination that he is reasonably likely to commit a future crime has at least the level of support necessary to preclude this flavor of due process claim.

## CONCLUSION

For these reasons, the Court will **GRANT** the Commission's motion to dismiss, Dkt. 9, and **DENY** Dufur's motion for appointment of counsel, Dkt. 14.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 24, 2018